**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HASMIK KARAPETYAN,<br><br>                                    Petitioner,<br><br>v.<br><br>WARDEN OF OTAY MESA<br>DETENTION CENTER, et al.,<br><br>                                    Respondents. | Case No.:  3:26-cv-00697-RBM-MSB<br><br>**ORDER GRANTING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**<br>**[Doc. 6]** |

Pending before the Court is Petitioner Hasmik Karapetyan's ("Petitioner") Amended Petition for a Writ of Habeas Corpus ("Amended Petition") pursuant to 28 U.S.C. § 2241. (Doc. 6.)  For the reasons set forth below, the Amended Petition is **DENIED**.

## I.    BACKGROUND

**A.    Factual Background**

Petitioner, a native and citizen of Armenia, entered the United States on or around January 15, 2025.  (Doc. 3 at 1.)  Petitioner was detained and placed into United States Immigration and Customs Enforcement's ("ICE") custody where she remains as of today.  (Doc. 4 at 2.)  On February 11, 2025, Petitioner was issued a Notice to Appear charging her as removable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as an immigrant not in possession of a valid entry document.  (Doc. 3-2 at 1, 4.)

1

On August 4, 2025, an immigration judge ("IJ") ordered Petitioner removed to Armenia. (Doc. 1 at 10–13; Doc. 3-1 at 1–4.) The IJ also denied Petitioner's application for asylum but granted withholding of removal. (Doc. 1 at 1.) Petitioner and the United States Department of Homeland Security ("DHS") both waived appeal. (Doc. 3-1 at 4.)

**B.    Procedural Background**

On December 15, 2025, Petitioner filed her first habeas petition challenging her continued detention as unconstitutionally prolonged. *Karapetyan v. LaRose*, Case No. 3:25-cv-03640-JLS-AHG (S.D. Cal. Dec. 15, 2025), ECF No. 1. The Honorable Janis L. Sammartino denied Petitioner's first petition, finding that Petitioner's detention had not been unreasonably prolonged and that the Court lacked jurisdiction over her deliberate indifference to medical needs claim. *Id.*, ECF No. 10 at 5, 7.

On February 4, 2026, Petitioner commenced a new action by filing the instant Petition. (Doc. 1.) On March 23, 2026, after the Petition was fully briefed (*see* Docs. 3–4), the Court denied the Petition with leave to amend. (Doc. 5 at 6.) The Court found that although the six-month presumptively reasonable detention period had passed, Petitioner had failed to meet her initial burden under *Zadvydas*. (*Id*. at 5–6.)

On April 8, 2026, Petitioner timely filed the Amended Petition. (Doc. 6.) On April 21, 2026, Respondents filed a Motion to Vacate Order Enjoining Removal and Dismiss Petition ("Motion to Vacate"). (Doc. 9 at 1.) In the Motion to Vacate, Respondents "request[ed] dismissal of this case so ICE may effectuate removal" and stated that "ICE is prepared to remove Petitioner from the United States next week, with the initial flight scheduled for tomorrow, April 22, 2026, to another state." (*Id*. at 1.) Petitioner filed a Motion for Temporary Restraining Order that same day, claiming that "neither Petitioner nor Petitioner's counsel were provided a notice of Respondents' intent to remove her from the United States." (Doc. 10 ¶ 8.) On April 22, 2026, the Court denied Respondents' Motion to Vacate, granted Petitioner's TRO Motion, and set a briefing schedule for the Amended Petition. (Doc. 11 at 6–8.) Respondents filed a Return to the Amended Petition (Doc. 12) and Petitioner filed a Traverse (Doc. 13).

3:26-cv-00697-RBM-MSB

## II.   <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.   <u>DISCUSSION</u>

Petitioner challenges her continued detention as prolonged in violation of the Fifth Amendment's Due Process Clause, as interpreted by Supreme Court's decision in *Zadvydas v. Davis*, 553 U.S. 678 (2001), the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). (Doc. 6 ¶¶ 27–54.) Respondents argue that Petitioner cannot show that there is no significant likelihood of removal in the reasonably foreseeable future because ICE "has identified a third country—Moldova—and made travel arrangements for Petitioner." (Doc. 12 at 1.)

As the statutory provision governing Petitioner's detention determines what procedures Respondents must follow, the Court will address this issue first.

### A.   **Detention Authority**

Under 8 U.S.C. § 1225(b)(2), noncitizens are subject to mandatory detention. Section 1225 applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Once [a noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Section 1231(a) "governs the detention,

3:26-cv-00697-RBM-MSB

release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). After the entry of a final removal order, a noncitizen is subject to mandatory detention for 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1). As relevant here, the removal period begins when the removal order becomes administratively final. *See id.* § 1231(a)(1)(B)(i). Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas*, 533 U.S. at 682. The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id*. at 689.

In this case, an IJ ordered Petitioner removed and granted withholding of removal on August 4, 2025. (Doc. 1 at 12–13.) Both parties waived their right to appeal. (*Id*. at 13.) As such, Petitioner's removal order became administratively final on August 4, 2025. *See Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *1 n.5 (E.D. Cal. Sept. 18, 2025), *appeal dismissed*, No. 25-7265, 2025 WL 4233827 (9th Cir. Dec. 2, 2025) ("If both parties waive appeal or neither party appeals within the 30-day period, the withholding or CAT relief grant and the accompanying removal order become administratively final.") (citing 8 C.F.R § 1241.1). Petitioner's detention is therefore governed by 8 U.S.C. § 1231(a).

**B.    *Zadvydas***

Petitioner claims she "has met her initial burden under *Zadvydas* to show good reason to believe that there is no significant likelihood of her removal" because she "was granted withholding of removal, third country removal is exceedingly rare, and for the past 8 months, ICE has not been able to remove her to a third country[.]" (Doc. 6 ¶ 47.)[1] Petitioner further claims that her removal to Moldova, the third country Respondents have now identified for her removal, is unlikely because she has a "credible fear of removal to

---

[1]  Neither party disputes that Petitioner has been detained for longer than the six-month presumptively reasonable period.

3:26-cv-00697-RBM-MSB

Moldova" and Respondents have not confirmed that they have obtained a valid travel document. (Doc. 13 ¶¶ 5–6, 9.)[2]

The Supreme Court has recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. *Zadvydas*, 533 U.S. at 701. After the six-month period expires, Petitioner has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. Once the noncitizen meets this initial burden, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id*. If "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Id*. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not leave or is not removed within the [90-day] removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

In this case, Petitioner was granted withholding of removal (*see* Doc. 6 ¶ 4), which "presents a legal impediment to [her] eventual removal because [she] may not be removed to" Armenia, and she does not appear to have citizenship or significant ties to any other country. *See Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1160–61 (S.D. Cal. 2026). Although Respondents recently identified Moldova as a third country for her removal, Petitioner asserts "a fear of removal to Moldova, based on the possibility of chain refoulement to Armenia, where it is more likely than not, she will be persecuted based on her political activism in Armenia." (Doc. 13 ¶ 9.) In support, Petitioner references articles showing that "[i]n 2018, Moldova arrested seven Turkish asylum seekers with pending asylum applications and immediately deported them to Turkey." (*Id*. ¶¶ 10–11 & n.1 (citing

---

[2] Respondents did not identify Moldova as a third country for Petitioner's removal until their most recent Return to the Amended Petition. (*See* Doc. 9 at 1 ("ICE is prepared to remove Petitioner from the United States next week, with the initial flight scheduled for tomorrow, April 22, 2026, to another state.").)

3:26-cv-00697-RBM-MSB

*Moldova: Seven People Deported to Turkey Despite Major Human Rights Concerns*, Amnesty International (Sept. 6, 2018), https://www.amnesty.org/en/latest/news/2018/09/moldova-seven-people-deported-to-turkey-despite-major-human-rights-concerns-2; Mark Akkerman, *Outsourcing Oppression: How Europe Externalizes Migrant Detention Beyond Its Shores* (Apr. 2021), https://www.tni.org/files/publication-downloads/outsourcingoppression-report-tni.pdf).)

As discussed further below, Petitioner is entitled to apply for such fear-based relief especially in light of her withholding of removal findings. *See* 8 U.S.C. § 1231(b)(3) ("[T]he Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion"); *see also Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (noting that failing to notify "individuals who are subject to deportation" of the right to apply for "withholding of deportation to the country to which they will be deported" violates due process and INA regulations). "While such proceedings may only delay removal, 'the fact that Petitioner likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future.'" *Ndandu*, 819 F. Supp. 3d at 1162 (quoting *Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025)). Petitioner has therefore demonstrated "good reason to believe" that her removal is not significantly likely "in the reasonably foreseeable future," which shifts the burden to Respondents to "respond with evidence sufficient to rebut [this] showing." *Zadvydas*, 533 U.S. at 701.

Respondents argue that Petitioner's removal is imminent because ICE "has identified a third country—Moldova—and made travel arrangements for Petitioner." (Doc. 12 at 1–2; *see* Doc. 12-1, Declaration of Jesus Blanco ["Blanco Decl."] ¶¶ 13–16.) The only evidence Respondents submit is the Declaration of Jesus Blanco, a Deportation Officer in ICE's Enforcement and Removal Operations ("ERO"), in which he attests that

3:26-cv-00697-RBM-MSB

"ICE sent a travel document request to ERO's Removal and International ('RIO') headquarters for review" on September 10, 2025, and "was able to identify a third country for [Petitioner's] removal, Moldova." (Doc. 12-1 [Blanco Decl.] ¶¶ 13–14.) However, Respondents do not assert that valid travel documents were issued for Petitioner's removal or point to any evidence showing that ICE completed or submitted a request for such travel documents to Moldova. Nor do they present any argument that Petitioner can be lawfully removed without travel documents. *See Andemicael v. Noem*, No. 5:25-CV-02999-KK-MBK, 2026 WL 734522, at *8 (C.D. Cal. Feb. 12, 2026), *report and recommendation adopted*, No. 5:25-CV-02999-KK-MBK, 2026 WL 734588 (C.D. Cal. Feb. 20, 2026) (noting "the apparent novelty of [the Government's] assertion" and finding the Government failed to meet its "burden to show that [it] can lawfully remove [p]etitioner to Eritrea while its request for travel documents is pending."). Instead, Respondents vaguely assert that ICE has "made travel arrangements for Petitioner" based on "diplomatic assurance from the Moldovan government" which "have been deemed credible." (Doc. 12 at 1; Doc. 12-1 [Blanco Decl.] ¶ 15.) Although Respondents already attempted to remove Petitioner without notice (*see infra* Sec.III.C), the record before the Court does not show that Respondents have secured valid travel documents to lawfully effectuate her removal.

Accordingly, the Court finds that Respondents fail to respond with evidence sufficient to rebut Petitioner's showing. *See Abduvakhidov*, 2026 WL 1298157, at *7 *n.3 (finding that "[a]lthough [the Government] attempted to remove [the petitioner] to Moldova in violation of the requirements of due process, . . . , [the Government] provided no evidence that Moldova is willing to accept [the petitioner] for a third-country removal under 8 U.S.C. § 1231(b)(2)(E).").

Because Petitioner met her burden to show removal is not reasonably foreseeable and Respondents failed to rebut this showing, her continued detention is "unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700.

## C. Third Country Removal

Petitioner argues that, as Respondents' recent attempt to remove her to a third

3:26-cv-00697-RBM-MSB

country shows, under the relevant policy, "ICE 'will not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal.'" (Doc. 13 ¶¶ 7–9 (citation omitted).) The Court agrees.

"In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016) (citing *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999)). Many district courts, including this Court, have therefore held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both [applicable] regulations and the constitutional right to due process." *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (quoting *Andriasian*, 180 F.3d at 1041); *see Louangmilith v. Noem*, 808 F. Supp. 3d 1139, 1145 (S.D. Cal. 2025). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Id*. (quoting *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025)). As such, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id*. (quoting *Nguyen*, 796 F. Supp. 3d at 727).

Despite this requirement, Respondents have already attempted to remove Petitioner admittedly without notice or an opportunity to assert her credible fear of removal to Moldova. (*See* Doc. 12-1 [Blanco Decl.] ¶ 15; Doc. 13 ¶¶ 7, 9.) The Court therefore finds that Petitioner's removal to a third country without notice or an opportunity to be heard violates due process.

## IV.   CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 6) is **GRANTED**. The Court further **ORDERS** as follows:

1. Respondent is **ORDERED** to immediately release Petitioner from custody,

3:26-cv-00697-RBM-MSB

subject to "appropriate conditions" of supervision to be determined by immigration authorities. *See* 8 C.F.R. § 241.13(h).

2. The Government **SHALL NOT** re-detain Petitioner under 8 U.S.C. § 1231(a)(6) unless and until the Government obtains a travel document for her removal and follows all applicable statutory and regulatory procedures.

3. The Government is **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard.

**IT IS SO ORDERED**.

DATE:  June 10, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

9

3:26-cv-00697-RBM-MSB